Filed 6/30/25  P. v. Taylor CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and<br>        Respondent,<br><br>v.<br><br>JESSIE JAMES TAYLOR,<br><br>        Defendant and<br>        Appellant. | A170633<br><br>(Alameda County<br>Super. Ct. No. 173702) |

Jessie James Taylor appeals from the trial court's denial of his petition under Penal Code,[1] section 1172.6 to vacate his voluntary manslaughter conviction.  He contends the trial court erred by admitting certain evidence and that the record, with or without that evidence, is insufficient to support the trial court's conclusion that he is ineligible for resentencing relief.  We find no error and affirm.

**BACKGROUND**

According to testimony by Oakland police officer Mario Martinez at the preliminary hearing, one day in February 2014 Danielle W. flagged down Martinez as he was driving by and

_____

[1] Undesignated statutory citations are to the Penal Code.

1

asked him for help retrieving her belongings from a house on 31st Street in Oakland. When Martinez arrived, he saw Taylor arguing with three men at the top of the stairs to the house. Martinez spoke to the men, and Taylor told him that the dispute was about rent money he owed the men for living at the house. The dispute was heated, and Martinez believed it would have soon escalated to a fist fight if he had not arrived and intervened. Taylor kept trying to instigate a fight after Martinez had separated him from the others. Martinez eventually left the location.

Louise D. testified at the preliminary hearing that about a half hour after this incident, she was standing in the street talking to friends next door to the house on 31st Street. She heard two people talking loudly inside the house and saw Taylor. This was the second or third time Louise D. had seen Taylor. When asked whether she knew him before the incident, Louise D. testified, "No, I didn't. I don't want to know him, either."

Taylor brought a bike out of the house and slammed it on the porch outside the front door, which was at the top of a few exterior stairs. Taylor next brought someone out the door by the collar. Taylor stabbed the man in the chest about three times with a knife with a wide blade. Louise D. gave two different versions of Taylor's statement after stabbing the victim. At one point, Louise D. testified that Taylor said, "Now you see not to mess with me. Now, die, die." Louise D. later testified that Taylor said, "I'll show you not to mess with me. Now, die, die." Louise D.'s statement to the police said that Taylor had also said,

2

"I ain't no joke." After stabbing the man, Taylor went inside. A few minutes later he came out, stepped over the victim, and walked down the street.

At the time of the incident, Louise D. was using a walker and wearing glasses. She needed the glasses to drive but did not drive anymore because of her vision. She needed to get new glasses at the time of the incident after having cataract surgery. She sometimes got dizzy from high blood pressure and took medication for it. But Louise D. recalled that the man who did the stabbing was wearing a dark blue shirt with white horizontal striping, with a couple buttons at the collar, and a dark blue baseball cap. She did not know Taylor's name at the time of the incident and only learned it later from the newspaper and from a police detective.

Martinez returned to the house. One of the individuals who had been at the house earlier was now lying on his back at the top of the stairs to the house. When he arrived, Danielle W. approached him and said something like, "Jessie did it. Jessie did it." Martinez clarified with Danielle W. that she meant that Taylor had stabbed the victim, whose name was Francis Nwagbo.

In April 2014, Taylor was charged by information with murder, with an enhancement for personal use of a deadly weapon and several allegations regarding prior prison terms and strike convictions. In May 2016, Taylor pled no contest to voluntary manslaughter and admitted one prior conviction as a prior prison term under section 667.5, subdivision (b) and as a strike, but not as a serious felony. Taylor also admitted to

3

serving prior prison terms on two other convictions but did not admit those convictions as strikes or serious felonies. His counsel stipulated that there was a factual basis for his plea. In August 2016, the trial court sentenced Taylor to the negotiated term of 25 years in prison.

In January 2023, Taylor filed a petition for resentencing under what is now section 1172.6, alleging the information had allowed the prosecution to proceed on a theory of felony murder, murder under the natural and probable consequences doctrine, or another theory under which malice was imputed based on his participation in a crime. He further alleged he had accepted a plea offer in lieu of a trial and could not presently be convicted of murder because of intervening changes to the law of murder. The trial court appointed counsel, and the People conceded that a hearing was necessary to determine Taylor's eligibility for relief.[2]

In advance of the evidentiary hearing, the People submitted the transcript of the preliminary hearing. The parties stipulated to the admission of a statement Scott V. had made to the police in February 2014 as well as his responses to a photo line-up the police had showed him. The parties also stipulated

_____

[2] Taylor noted in response to the People's briefs that if his section 1172.6 resentencing petition were denied, he would request a full resentencing under section 1172.75 because the prior prison term enhancements he admitted were no longer valid. After further proceedings on that request, the trial court resentenced Taylor to a term of 17 years. Taylor separately appealed from that resentencing, contending the trial court should have reduced his sentence even further. We address that appeal in a concurrently filed opinion.

that Nwagbo had only a single stab wound to his chest, that Taylor was 55 years old on the day of the stabbing, and to the admission of two pictures of Taylor on the day of the incident showing Taylor before and after the stabbing. The photo of Taylor from before the stabbing showed him wearing a shirt with blue and white horizontal stripes over the top of another dark blue shirt with a collar and a dark baseball cap. The second photo from after the stabbing showed him wearing a dark blue polo shirt with white and light blue stripes across the chest.

In his February 2014 statement, Scott V. told the police that he had lived on 31st Street across the street from the scene of the stabbing since November 2013. On the day of the stabbing, he first heard a commotion and saw a group of high school-aged kids with bikes, with one person knocking on the door and trying to open it. The police came, and Scott V. stopped paying attention. About a half hour later, he heard a male voice yelling, but there was no one outside. A minute passed, and he heard the front door slam. One man had laid down another man on the porch, with a bike halfway outside the door in an awkward position. The first man repeatedly picked up the second man by the front of his clothing and punched him in the face. The second man looked like he was knocked out. The first man pulled out what looked like a switchblade. He made horizontal slashing motions a few times near the second man's throat and chest, and then put it away. The aggressor went back into the house.

When asked to describe the aggressor's race, Scott V. said, "Uh, I – I wasn't looking, like, uh, I don't – I couldn't say it was –

I probably, just mixed race, I don't know. I don't . . . ." But when prompted, Scott V. said the aggressor was male, darker, in his 30s, wearing a blueish "wife beater" and baggy jeans. Scott V. also said the aggressor was five feet, eight inches tall, weighed about 165 pounds, and was not very muscular. When asked about his hair, Scott V. said "I don't think it was long, but . . . but I didn't pay a lot of attention . . . to – to him unfortunately." He also said he did not pay much attention to the aggressor's face. Scott V. had never seen either of the people involved in the incident before.

When first shown Taylor's photo in a photo line-up, Scott V. said, "That is not him." He identified a different person's photo as having a similar complexion and shape of the head and shoulders to the aggressor, but Scott V. did not conclusively identify that person as the aggressor.

## DISCUSSION

### I. Legal background

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) to change the state's laws relating to murder. (*People v. Oyler* (2025) 17 Cal.5th 756, 835.) " 'Senate Bill 1437 "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." ' " (*Ibid.*) " 'Senate Bill 1437 also created a procedural mechanism for those convicted of

6

murder under prior law to seek retroactive relief.' " (*Id.* at p. 836.)

After several amendments, this mechanism is located in section 1172.6 and allows "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter" to file a petition "to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts" if certain conditions are met. (§ 1172.6, subd. (a).) Those conditions are: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (*Ibid.*)

"A petition that includes '[a] declaration by petitioner that the petitioner is eligible for relief . . . , based on all the

7

requirements of subdivision (a),' the case number and year of the petitioner's conviction, and whether the petitioner seeks counsel is facially sufficient and entitles the petitioner to counsel. (§ 1172.6, subd. (b); [citation].) A facially sufficient petition also triggers the People's duty to submit a response and the petitioner's right to submit a reply on the question of whether a prima facie case for relief exists. (§ 1172.6, subd. (c).) 'After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief.' (*Ibid.*) If the 'petitioner makes a prima facie showing,' then the trial court issues an order to show cause and holds 'a hearing to determine whether to vacate the . . . conviction and to recall the sentence and resentence the petitioner.' (*Id.*, subds. (c), (d)(1).)" (*People v. Patton* (2025) 17 Cal.5th 549, 558–559.)

The parties may present evidence at an evidentiary hearing on a section 1172.6 petition, and "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under" current law. (§ 1172.6, subd. (d)(3).) "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary

8

hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule." (*Ibid.*) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid.*)

## II. Admissibility of evidence from preliminary hearing

Taylor first attacks the evidence the trial court admitted at the hearing. He contends that the trial court should have excluded the transcript of the preliminary hearing in its entirety or, at a minimum, excluded Martinez's testimony about what people told him about the cause of Taylor's disagreement with the men at 31st Street and Danielle W.'s statement to him upon his return to 31st Street that "Jessie did it." Taylor failed to object to the admission of any evidence in the trial court, so he has forfeited these arguments. (*People v. Vance* (2023) 94 Cal.App.5th 706, 714 [applying forfeiture rule to § 1172.6 evidentiary hearing].)

Recognizing the forfeiture problem, Taylor argues that his counsel's failure to object in the trial court constituted ineffective assistance of counsel. To prevail on such a claim in this appeal, Taylor " 'must show that [his] counsel's performance was deficient, and that the deficiency prejudiced the defense.' " (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1165.) Prejudice for these purposes means " ' "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

9

would have been different." ' " (*In re Hernandez* (2019) 33 Cal.App.5th 530, 546.) Taylor fails to show one or both elements as to the evidence he challenges.

Regarding the preliminary hearing transcript as a whole, we held in *People v. Davenport* (2023) 95 Cal.App.5th 1150, 1158, that a transcript of a preliminary hearing is admissible at a later section 1172.6 evidentiary hearing in the same case. Because any objection would therefore have been futile, Taylor's counsel was not deficient for failing to object. (*People v. Anderson* (2001) 25 Cal.4th 543, 587 ["Counsel is not required to proffer futile objections"].)

Nor was Taylor's counsel deficient for failing to object to Martinez's hearsay testimony about the cause of Taylor's disagreement with Nwagbo and the other men at 31st Street. Taylor points out that while section 1172.6, subdivision (d)(3) makes prior hearing testimony generally admissible, it excepts and excludes "hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872." Section 872, subdivision (b) allows a court to base a probable cause determination at a preliminary hearing on hearsay testimony by certain law enforcement officers. Counsel at a resentencing hearing therefore may object to any hearsay testimony by a law enforcement officer in a preliminary hearing transcript that was admissible at the hearing only by virtue of section 872, subdivision (b). However, the only hearsay that Taylor points to about the cause of the disagreement at 31st

10

Street came from what Taylor himself told Martinez.[3]  As the People point out in their brief and Taylor does not dispute in his reply, Taylor's statements to Martinez were admissible as statements by a party.  (Evid. Code, § 1220.)  Because this testimony was admissible independent of section 872, subdivision (b), Taylor's counsel was not deficient in failing to object to it.

Finally, Danielle W.'s statement to Martinez upon his return to the 31st Street that "Jessie did it" may have been admissible independent of section 872, subdivision (b) as a spontaneous declaration, since she made the statement fairly close in time to the stabbing.  (Evid. Code, § 1240; e.g., *People v. Jones* (1984) 155 Cal.App.3d 653, 662 [affirming admission of spontaneous declaration made 30 to 40 minutes after incident].)  But even if we assume for the sake of argument that Taylor's counsel was deficient for failing to object to Danielle W.'s statement, Taylor has not shown that this deficiency was prejudicial.  The trial court did not mention Danielle W.'s statement at all when it set out the reasons for its finding that Taylor was Nwagbo's actual killer.  And as we discuss *post*, the other evidence that the trial court did cite provides substantial evidentiary support for that finding.  There is not a reasonable

_____

[3] In response to questioning by Taylor's counsel, Martinez also related the statements of the other men at 31st Street about the causes of the disagreement.  To the extent that Taylor contends his counsel at the resentencing hearing should have objected to the testimony that his own counsel elicited at the preliminary hearing, we conclude any such deficiency was not prejudicial because Taylor's own admissions provided the same information.

11

probability that exclusion of Danielle W.'s hearsay statement would have led to a different result in this resentencing proceeding.

## III. Evidence of guilt

Taylor next contends that even if the trial court made no other error, its ruling must be reversed because its finding that he was the actual killer lacks substantial evidentiary support. "We review the trial judge's factfinding for substantial evidence. [Citation.] We ' "examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt." ' [Citation.] Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt."[4] (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.) " 'Even when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the standard is sufficient to uphold the finding.' "

_____

[4] We reject Taylor's suggestion that we review the trial court's factual determinations independently. (*People v. Sifuentes* (2022) 83 Cal.App.5th 217, 232–233.)

(*People v. Fuiava* (2012) 53 Cal.4th 622, 711.) " ' "[U]nless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." ' " (*People v. Montanez* (2023) 91 Cal.App.5th 245, 271.)

The trial court cited Martinez's description of Taylor as the aggressor in the quarrel that preceded the stabbing and Louise D.'s identification of Taylor as the person who stabbed Nwagbo. Because these witnesses identified Taylor as the killer and explained a possible motive, and the testimony of a single witness is sufficient to support the trial court's finding, we conclude substantial evidence supports the trial court's denial of Taylor's petition.

Taylor resists this conclusion by first highlighting flaws or problems with Louise D.'s testimony. He notes that Louise D. learned Taylor's name from the police and news reports, was wearing glasses with an outdated prescription, had stopped driving because of her poor vision, and required medication for high blood pressure that could cause dizzy spells. He also emphasizes that she gave different versions of Taylor's statement after stabbing Nwagbo and she saw three stabbing motions but Nwagbo had only a single stab wound. He finally notes that he alleged in his petition that Louise D. had a motive to testify falsely because of an undisclosed plea deal, but he admits he did not develop this allegation at the hearing.

None of these points, either individually or taken together, makes Louise D.'s account " ' "physically impossible or inherently

13

improbable" ' " (*People v. Montanez, supra*, 91 Cal.App.5th at p. 271), so they are insufficient to show the trial court's finding lacked substantial evidentiary support. Besides, the trial court addressed many of these arguments and reasonably rejected them. Louise D. said she had seen Taylor twice before the stabbing. She admitted that she had only learned his name from the police or media and did not know him, but she also said, "I don't want to know him, either." The trial court reasonably construed this as suggesting that Louise D. was familiar enough with Taylor to know who he was. Nothing in the record demonstrated that Louise D.'s eyesight problems or medication would have caused her to misidentify Taylor. To the contrary, Louise D. described Taylor as wearing a blue and white striped shirt with a couple of buttons at the collar and a dark cap, which matched a photo of Taylor's clothing. The difference between Louise D.'s one account of Taylor saying, "Now you see not to mess with me. Now, die, die," and her other version that he said, "I'll show you not to mess with me. Now, die, die," is not significant. The gist of the statements is similar, and both of the statements are consistent with Martinez's testimony that Taylor had a quarrel with Nwagbo before the stabbing. Nothing in Taylor's petition or brief on appeal gives any details about Louise D.'s alleged plea deal that gave her a motive or bias. Although, as the trial court pointed out, Louise D.'s testimony that defendant made multiple stabbing motions did not match Nwagbo's single stab wound, neither did Scott V.'s statement that the killer made multiple slashing motions with the knife. The

14

discrepancy between the witnesses' accounts and Nwagbo's injury is not material.

Taylor also emphasizes Scott V.'s statement to the police. Taylor points out that Scott V.'s description of the killer and the killer's clothing did not match Taylor, with Scott V. saying the killer was in his 30s, mixed race and about 165 pounds, while Taylor was a dark-skinned African American who was solidly built and 55 years old. Taylor also notes that Scott V. ruled out Taylor in the photo line-up.

The trial court was entitled to resolve the conflict in the evidence between Louise D.'s testimony and Scott V.'s statement. The trial court did so by discounting Scott V.'s statement, both because he saw the stabbing from across the street, while Louise D. was next door, and because Scott V.'s testimony was equivocating and not certain. Taylor disputes the latter point. But when Scott V. was asked to describe the killer, he said, "Uh, I – I wasn't looking, like uh, I don't – I couldn't say it was – I probably, just mixed race, I don't know. I don't . . . ." And later, when asked about the killer's hair, Scott V. said, "I don't think it was long, but . . . but I didn't pay a lot of attention . . . to him unfortunately." Scott V. was more confident in his description of the killer as wearing baggy jeans and a blueish "wife beater," but given Scott V.'s distance from the event and his admittedly imprecise memory of the killer's appearance, the trial court could reasonably discount Scott V.'s description and failure to identify Taylor as the killer.

## DISPOSITION

The trial court's order is affirmed.

BROWN, P. J.

WE CONCUR:

STREETER, J.
CLAY, J.*

*People v. Taylor* (A170633)

---

\* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.